IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| KAREN FOX, ) | |
| ) | |
| Plaintiff. ) | |
| ) | |
| v. ) | COMPLAINT |
| ) | |
| BROAD RIVER FURNITURE, ) | Jury Trial Demanded |
| INC, d/b/a ASHLEY FURNITURE ) | |
| HOMESTORES; HILLSBORO ) | |
| RETAIL GROUP, INC. d/b/a ) | |
| ASHLEY FURNITURE ) | |
| HOMESTORES, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

1.  This is an action for equitable and legal relief to redress unlawful retaliation and gender discrimination against the plaintiff, Karen Fox. The suit is brought against Broad River Furniture, Inc, d/b/a Ashley Furniture HomeStores ("Broad River"), and Hillsboro Retail Group, Inc. d/b/a Ashley Furniture Homestores (collectively "defendants") to secure the protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (hereinafter "Title VII"). Title VII provides that "[i]t shall be an unlawful employment practice . . . to discriminate against any employees or applicants . . .

1

because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, . . . , assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §2000e-3. The plaintiff seeks declaratory, injunctive and other equitable remedies, reinstatement, backpay, compensatory and punitive damages, costs, attorneys' fees and expenses.

### I.     JURISDICTION AND VENUE

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 1343(a)(4), 28 U.S.C. §§2201 and 2202, and 42 U.S.C. §2000e-5(f)(3).

3.     The unlawful employment practices alleged hereinbelow were committed by the defendants within the states of South Carolina and North Carolina within which the defendants operate and do business. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), and 42 U.S.C. §2000e-5(g).

4.     The plaintiff requests a jury trial on all claims and defenses.

### II.    PARTIES

5.     Plaintiff Karen Fox is a female citizen of the United States and a resident of South Carolina. The plaintiff was formerly employed by the defendants as a Regional Merchandise Manager.

6.      Defendants operate a number of Ashley Furniture HomeStores and have more than fifteen (15) employees.  Defendants have acted as a single, integrated employer of the plaintiff with common ownership and management, joint control of daily operations, common employees and products. interrelated merchandising and operations, centralized personnel policies and management and common financial controls. Broad River Furniture, Inc. publicly states on its website that (1) its "Management Team" includes plaintiff's immediate supervisor, Jonathan Houck, as its "Vice President of Merchandising, Visual Impact & Store Design" (Houck made the decisions at issue in this case); (2) Houck "joined Broad River Furniture in June 2011";  (3) Broad River owns and operates the Greenville, South Carolina store that is part of the group of stores for which the plaintiff was responsible as the Regional Merchandise Manager; (4) Broad River acquired" the Greenville store in "May 2005"; (5) Broad River employs more than "500 full-time workers" at "16 Ashley Furniture HomeStores", including the Greenville, South Carolina store that was part of the region for which the plaintiff was responsible; (6) Broad River's centralized "corporate office" is located in Fort Mill, South Carolina; (7) Broad River operates a centralized corporate "Distribution Center & Customer Pick-Up" service in a "174,000 square foot facility" which affords "easy access to support Broad River's 16 Ashley Furniture HomeStores", including the stores for which the plaintiff was

3

responsible as Regional Merchandise Manager; (8) Broad River operates a centralized "Application/Career Inquiries" service for recruitment and hiring employees at "careers@BroadRiverFurniture.com" for the stores and region in which the plaintiff worked; and (9) Broad River operates a centralized corporate "Customer Care" service at "WeCare@ShopAshley.com" that services customer relations for the stores for which the plaintiff was responsible.

### III.  ADMINISTRATIVE EXHAUSTION

7.  The plaintiff has satisfied all conditions precedent to suit required by Title VII.  Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the occurrence of the last discriminatory act and has received a Notice of Right to Sue from the EEOC less than 90 days before filing this case.

### IV.  STATEMENT OF FACTS

8.  The plaintiff was a Regional Merchandise Manager for the defendants until she was discharged from employment on September 2, 2014.  In that capacity, plaintiff was responsible for showroom floor design for multiple Ashley Furniture stores and supervised two "Visual Showroom Merchandisers" ("VSM") along with various "Showroom Movers" who reported to a VSM and then to the plaintiff.

9. Plaintiff was an excellent employee and received excellent evaluations of her performance as Regional Merchandise Manager throughout her employment with the defendants.

10. Plaintiff was never disciplined for performance, misconduct or other reasons during her employment.

11. Defendants, however, discharged the plaintiff when she opposed unlawful gender discrimination in the filling of VSM positions and opposed gender-based harassment of herself and other female employees by her superior, Vice President of Merchandising, Jonathan Houck.  Plaintiff complained numerous times about Houck's unlawful conduct, the last time coming within days of defendants' termination of plaintiff's employment on September 2, 2014.   In plaintiff's last complaint, she called defendants' Human Resource department to report that Houck had sent her an email calling her a "bitch" and had  a pattern of discriminating against women.  As her immediate superior, Houck had previously told the plaintiff that he wanted men to be hired as VSM because only men can "work like a Mexican" – an opinion based on unlawful sexual stereotypes against women and that had disparate impact on women in violation of Title VII. Plaintiff requested that she be reassigned to someone else's supervision for these reasons.  Rather than doing anything to assure that there would be no reprisal or retaliation by Houck against the plaintiff for

reporting such disparate treatment, the HR Department told Houck that the plaintiff had turned him in for sending her an email calling her a "bitch." This caused Houck to call the plaintiff on the phone to curse and harass her for having reported his illegal acts and to threaten her discharge. In a hostile tone and raised voice, Houck told the plaintiff that she "didn't know who it was that she was f___ with" and that he could "end her employment anytime he wanted" without consequence. She was discharged a few days later without cause.

12.     Houck also routinely harassed the plaintiff and other women working under her in an effort to get them to quit their jobs in the months preceding plaintiff's discharge.  As part of such unlawful discrimination, Houck told the plaintiff that he was coming to Bonnie Evatt's store to force her to quit her VSM job and that he wanted her replaced with a man and to hire "no more women." On the day he came to Evatt's store in October 2013, Houck proceeded to act on his plan to harass her into quitting by treating her in a rude and disrespectful manner until she had had enough and resigned. Houck harassed and mistreated Bonnie Evatt based on his prejudiced opinion of women, openly expressing his sexual bias and stereotypes by calling her a flamboyant Southern Belle, a "damsel in distress" afraid "to break a fingernail" and otherwise demeaning her in front of her co-workers and subordinates.

13. The plaintiff reported Houck's stated bias against women and his harassment of Bonnie Evatt to the defendants' Human Resources department, but the defendants did not investigate or redress such disparate treatment. Immediately after plaintiff opposed such illegal gender discrimination, Houck began to retaliate and treat her differently in an effort to get her to quit in frustration as he had done with Bonnie Evatt. Such retaliation included "nitpicking" plaintiff's performance in ways that had not occurred prior to such opposition, screaming and yelling at her in front of co-workers and subordinates, calling her a "bitch", and subsequently discharging her from employment when she did not quit on her own.

14. After harassing Bonnie Evatt until she quit, defendants were unable to find a male candidate to fill the VSM vacancy over the next two to three months. By early 2014, the defendants had only two female candidates for Evatt's job. As a result, Lauren Holman was hired but she quit in short order. Houck then instructed the plaintiff once again that he did not want a woman to fill that job because only men (in his view) can "work like a Mexican."

15. Plaintiff refused to join in such illegal discrimination. She screened and interviewed all candidates for the vacant VSM position without regard to whether they were a man or a woman, narrowing the candidates to one man and one women. Based on the two candidates' overall qualifications, including their comparative

7

education, training and prior experience, the plaintiff selected and recommended the female candidate as the better qualified. The male candidate had only a general degree in art and no prior job experience relevant to being a VSM, while the female candidate had a more relevant degree in interior design and significant experience in the furniture market in High Point, North Carolina which clearly made her the best qualified applicant.

16.     When the plaintiff informed Houck that she had selected the female candidate as better qualified than the male, he rejected her recommendation and again stated that he did not want any more women in that job because only men could "work like a Mexican." Plaintiff called the Human Resource Manager, Nancy Hendrickson, to oppose hiring the less qualified male rather than the more qualified female candidate and to report Houck's retaliation against her for having reported and opposed such bias in her prior phone call. Plaintiff specifically told the HR Manager that Houck was engaged in illegal gender discrimination by instructing her to hire only a man for the vacant VSM position.

17.     The plaintiff subsequently sent a follow-up email to the HR Department to reiterate her opposition to Houck's gender discrimination and retaliation and to ask again why nothing was being done to investigate or redress such disparate treatment. As late as four or five days before the plaintiff was discharged on September 2, 2014,

she called defendants' Human Resource department to report that Houck had sent her an email calling her a "bitch" and requested that she be reassigned to someone else's supervision. She also complained that nothing was being done about Houck's ongoing harassment and disparate treatment of her and other women. Plaintiff told the HR Manager that Houck called her a "bitch" in an e-mail, yelled and screamed at her in front of her colleagues and continued to treat her differently than he had before she reported his discriminatory treatment of women.  Houck then called the plaintiff on the phone to curse and harass her for having reported his illegal acts and to threaten her discharge.  Before the plaintiff could terminate the phone call from fear, Houck ordered her to drive several hours away to Mooresville, North Carolina, to meet him on Friday.  Plaintiff responded that she didn't want to drive there alone or to be there with him by herself, but Houck told her she had no choice. Houck was so abusive in this call that the plaintiff was forced to end the call with nothing having been done to correct the situation. She was discharged a few days later without cause.

18.     Plaintiff was terminated even though employees who were not placed in the position of having to oppose illegal discrimination and who had equal or lesser performance were retained as employees.

19.     As the result of the foregoing violations of Title VII, the plaintiff was deprived of income and other benefits due her. The plaintiff also suffered

embarrassment, humiliation, inconvenience, and mental distress, including but not limited to, having to sell her home and move in with her parents

## V.     STATEMENT OF CLAIMS

20.    The plaintiff re-alleges and incorporates paragraphs 8-19 with the same force and effect as if fully set out in specific detail hereinbelow.

21.    As set forth more fully in the foregoing statement of facts and introductory paragraphs, defendants violated Title VII of the Civil Rights Act of 1964, as amended, by discharging the plaintiff when she opposed unlawful gender discrimination in the filling of VSM positions and opposed gender-based harassment of herself and other female employees by her superior, Vice President of Merchandising, Jonathan Houck.  Further, defendants violated Title VII by discharging Plaintiff for her participation in defendants' internal discrimination reporting processes.

22.    Acting on such bias, Houck routinely harassed the plaintiff and other female employees working under her.  Such violations are based, in part, on the direct evidence of gender discrimination and retaliation set forth above, together with circumstantial evidence of defendants' intentional discrimination and retaliation.

23.    Plaintiff was directly and adversely affected by such practices in the ways set forth in this Complaint, including being denied the right, enjoyment and

benefit of a gender-neutral workplace that is open to and respectful of persons of both sexes.

24. As the result of the foregoing violations of Title VII, the plaintiff was deprived of income and other benefits due her. The plaintiff also suffered embarrassment, humiliation, inconvenience, and mental distress, including but not limited to, having to sell her home and move in with her parents.

25. The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, back pay, an injunction, and compensatory and punitive damages is her only means of securing adequate relief.

26. The plaintiff is suffering and will continue to suffer irreparable injury from the defendants' unlawful conduct as set forth herein unless enjoined by this Court.

**JURY DEMAND AND PRAYER FOR RELIEF**

WHEREFORE, the plaintiff demands a trial by jury as to all claims and defenses and respectfully requests entry for all legal and equitable to which Plaintiff can show she is entitled, including:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the defendants violate the rights of the

plaintiff, as secured by Title VII of the Act of Congress known as "The Civil Rights Act of 1964," as amended.

2. Grant the plaintiff a permanent injunction enjoining the defendants, their agents, successors, employees, attorneys and those acting in concert with the defendants and at the defendants' bequest from continuing to violate Title VII.

3. Grant the plaintiff an order requiring the defendants to make the plaintiff whole by placing her in the position with defendants she would have occupied absent the discriminatory and retaliatory conduct set forth above, and by awarding her backpay (plus interest), lost benefits and compensatory, punitive, and/or nominal damages.

4. Grant the plaintiff any other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

Respectfully submitted this 27th day of September, 2016.

> s/ Brian Murphy
> Stephenson & Murphy, LLC
> 207 Whitsett Street
> Greenville, SC 29601
> Telephone (864) 370-9400
> Fax: (864) 240-9292
> brian@stephensonmurphy.com
>
> Attorneys for Plaintiff